IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01105-RM-MEH

JOE HAND PROMOTIONS, INC.,

    Plaintiff,

v.

JEREMY CARTER, individually and as a principal of Cyclone Zone, LLC,
CYCLONE ZONE, LLC,

    Defendants.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

    Plaintiff requests a default judgment against Defendants Cyclone Zone, LLC and Jeremy Carter. I find that this Court has subject matter jurisdiction to determine this dispute and personal jurisdiction over Defendants. Furthermore, Plaintiff's unchallenged facts assert valid claims against Defendants. As a result of these violations, I conclude that Plaintiff is entitled to statutory damages of $10,000.00 and enhanced damages of $50,000.00. Accordingly, pursuant to Federal Rule of Civil Procedure 55(b)(2), I recommend that the Honorable Raymond P. Moore grant Plaintiff's Motion for Default Judgment.

### BACKGROUND

**I.    Findings of Fact**

1.    Plaintiff is a company that specializes in distributing and licensing premier sporting events to commercial establishments. Compl. ¶ 4, ECF No. 1.

2.    The promoters of the Floyd Mayweather, Jr. v. Conor McGregor boxing match gave Plaintiff

the exclusive right to commercially distribute the presentation of the event on August 26, 2017. *Id.* ¶¶ 5–6.

3. Plaintiff charged businesses a fee equal to $30.00 per person legally permitted in the establishment. *Id.* ¶ 10; Aff. of Joe Hand ¶ 7, ECF No. 15-2.

4. Prior to the event, Defendant Cyclone Zone, LLC d/b/a Pueblo West Family Fun Center ("PWFFC") advertised on its Facebook page that it would broadcast the match. Additionally, PWFFC posted pictures immediately prior to the event showing its 362" projection screen. ECF No. 15-6.

5. Defendant Jeremy Carter—an officer and principal of PWFFC—advertised on his personal Facebook page that PWFFC planned to air the match. *Id.*

6. Defendants proceeded to show the event at PWFFC without paying Plaintiff a commercial licensing fee. Compl. ¶¶ 14, 19. Because the PWFFC had a capacity of 1,000 people, its fee would have been $30,000.00. Aff. of Joe Hand ¶ 8; ECF No. 15-6, at 19.

7. Defendants were able to obtain the event without paying Plaintiff through "(1) intercepting and redirecting cable or satellite service from a nearby residence, (2) registering their business location as a residence, (3) physically moving a cable or satellite receiver from a residence to their business, and/or (4) obtaining the [boxing match] in violation of the terms of their television service provider agreement." Compl. ¶ 12.

8. PWFFC charged entrants $10.00 on the night of the match. ECF No. 15-6, at 7, 16.

**II. Procedural History**

Based on the preceding facts, Plaintiff filed its Complaint on May 9, 2018. Compl., ECF No. 1. Plaintiff asserts claims for (1) satellite and cable piracy in violation of 47 U.S.C. §§ 553, 605 and

(2) copyright infringement. *Id.* ¶¶ 18–25. Plaintiff served Defendants with the Complaint on May 19, 2018, making the answer deadline June 11, 2018. *See* ECF Nos. 7, 7-1. After Defendants failed to respond, Plaintiff moved for entry of default on June 12, 2018. Mot. for Entry of Default, ECF No. 8. The Clerk of the Court entered default on June 18, 2018. ECF No. 9.

On July 6, 2018, Plaintiff filed the present Motion for Default Judgment, ECF No. 15. Plaintiff asserts it is entitled to $10,000.00 in statutory damages for Defendants' violation of 47 U.S.C. § 605. *Id.* at 8. Additionally, Plaintiff seeks enhanced damages of $50,000.00 due to Defendants' willful violation of the statute. *Id.* at 11–14. However, Plaintiff does not move for default judgment on its copyright infringement claim. Defendants did not file a response to Plaintiff's motion.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 55 governs entry of default and motions for default judgment. If a party fails to answer or otherwise defend a case, the clerk of the court may enter default pursuant to Rule 55(a). Fed. R. Civ. P. 55(a). After entry of default, a party cannot defend a claim on the merits. *See Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003) ("[D]efendant, by his default, admits the plaintiff's well-pleaded allegations of fact." (quoting *Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002))); *Adriana Int'l Corp. v. Thoeren,* 913 F.2d 1406, 1414 (9th Cir. 1990) ("[A] default judgment generally precludes a trial of the facts except as to damages.").

The plaintiff may then apply to the court for a default judgment. Fed. R. Civ. P. 55(b)(2). In analyzing a motion for default judgment, courts must consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment. *See McCabe v. Campos*, No. 05-cv-00846-

3

RPM-BNB, 2008 WL 576245, at *2 (D. Colo. Feb. 28, 2008) (citing *Black v. Lane,* 22 F.3d 1395, 1407 (7th Cir. 1994)). In determining the unchallenged facts, courts accept as true the well-pleaded allegations in the complaint. *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.,* 722 F.2d 1319, 1323 (7th Cir. 1983); *Malibu Media, LLC v. Ling*, 80 F Supp. 3d 1231, 1239 (D. Colo. 2015). Additionally, courts accept the undisputed facts set forth in affidavits and exhibits. *Deery Am. Corp. v. Artco Equip. Sales, Inc.*, No. 06-cv-01684-EWN-CBS, 2007 WL 437762, at *3 (D. Colo. Feb. 6, 2007).

"[A] party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Cablevision of S. Conn., L.P. v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001) (quoting *Shah v. N.Y. State Dep't of Civil Servs.*, 168 F.3d 610, 615 (2d Cir. 1999)). Trial courts are vested with broad discretion in deciding whether to enter a default judgment. *Grandbouche v. Clancy,* 825 F.2d 1463, 1468 (10th Cir. 1987); *Weft, Inc. v. G.C. Inv. Assocs.*, 630 F. Supp. 1138, 1143 (E.D.N.C. 1986) ("[U]pon a default, a plaintiff is entitled to a determination of liability unless he has failed to state a legal basis for relief or it is clear from the face of the complaint that the allegations are not susceptible of proof.").

## **ANALYSIS**

I recommend entering default judgment in favor of Plaintiff. After briefly addressing subject matter and personal jurisdiction, I find that Plaintiff's Complaint and evidence demonstrate violations of 47 U.S.C. §§ 553, 605. I then recommend granting Plaintiff the monetary relief it requests—$60,000.00 in damages for the statutory violations, $450.00 in costs, and its reasonable attorney's fees.

4

## I.  Subject Matter and Personal Jurisdiction

In determining whether a default judgment is warranted, I must first consider subject matter and personal jurisdiction. *See Williams v. Life Sav. & Loan,* 802 F.2d 1200, 1202–03 (10th Cir. 1986) (stating that lack of subject matter jurisdiction constitutes good cause to set aside a default judgment); *see also Dennis Garberg & Assoc. v. Pack-Tech Int'l Corp.,* 115 F.3d 767, 772 (10th Cir. 1997) (finding that the district court erred in failing to determine personal jurisdiction before entering default judgment).

I recommend finding that this Court has subject matter jurisdiction over the case and personal jurisdiction over Defendants. Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331, because Plaintiff's claims arise under a federal statute—47 U.S.C. §§ 553, 605. *See, e.g.*, *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 808 (1986) ("[T]he vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which federal law creates the cause of action."). Defendants are subject to the personal jurisdiction of this Court, because they are domiciled in Colorado. Compl. ¶¶ 8–9; Articles of Organization for PWFFC, ECF No. 15-5; *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.").

## II.  Violations of 47 U.S.C. §§ 553, 605

47 U.S.C. § 553 states: "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." Similarly, 47

5

U.S.C. § 605 provides:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

Plaintiff pleads violations of these sections. Plaintiff alleges that Defendants intercepted and aired the boding match at the PWFFC for their own benefit despite not being authorized to do so. Compl. ¶¶ 14–17, ECF No. 1. Additionally, Plaintiff asserts the event was broadcast over a satellite or cable system. *Id.* ¶ 12. In support of its allegations, Plaintiff produces evidence that Defendants repeatedly advertised the showing on Facebook. ECF No. 15-6. This is sufficient to demonstrate violations of 47 U.S.C. §§ 553, 605. *See Kingvision Pay-Per-View, Ltd. v. Gutierrez*, 544 F. Supp. 2d 1179, 1183–84 (D. Colo. 2008) (entering default judgment for violations of 47 U.S.C. §§ 553, 605, because the plaintiff alleged that a restaurant intercepted and broadcast a boxing match without authorization); *see also J&J Prods., Inc. v. Cela*, 139 F. Supp. 3d 495, 499–501 (D. Mass. 2015) (finding that a sports programming licensee, which had exclusive nationwide distribution rights to a professional boxing match, alleged violations of 47 U.S.C. §§ 553, 605 by asserting the defendants showed the event at their commercial establishment without authorization).

Defendant Jeremy Carter is individually liable if he had the "right and ability to supervise" the violation. *Softel, Inc. v. Dragon Med. & Sci. Commc'n, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997) (quoting *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963)). Plaintiff alleges Mr. Carter supervised the broadcast as the owner of the PWFFC. Compl. ¶¶ 8–9. Moreover, Plaintiff produces evidence that Mr. Carter advertised the event on his personal Facebook page. ECF No. 15-6, at 14. I find this sufficient to hold Mr. Carter individually liable for the violations.

Accordingly, the only remaining issue I must analyze is the damages to which Plaintiff is entitled for Defendants' violations.

## III. Damages

Although Plaintiff has alleged liability under §§ 553 and 605, it may not recover damages under both sections. *See, e.g.*, *Kingvision Pay-Per-View, Ltd. v. Gutierrez*, 544 F. Supp. 2d 1179, 1184 (D. Colo. 2008) ("[R]ecovery under both section 553 and section 605 is improper."). Plaintiff elects to recover statutory damages under § 605, which is proper. Mot. for Default Judgment 8, ECF No. 15-1; *Kingvision Pay-Per-View, Ltd. v. Villalobos*, 554 F. Supp. 2d 375, 382 (E.D.N.Y. 2008) ("Where a defendant is liable under both sections 553 and 605, the plaintiff is entitled to have damages awarded under section 605 because it provides greater recovery than does section 553."). Additionally, Plaintiff seeks enhanced damages, arguing Defendants willfully violated the statute. Mot. for Default Judgment 11–14. I find that Plaintiff establishes entitlement to statutory and enhanced damages.

Regarding statutory damages, section 605(e)(3)(C)(i)(II) provides: "the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . ." Courts generally calculate statutory damages "based solely on the estimated value of the services stolen, without consideration of other harms . . . or of other policies favoring deterrence." *Charter Commc'ns Entm't I, DST v. Burdulis*, 460 F.3d 168, 181 (1st Cir. 2006). Plaintiff submits evidence that the PWFFC had a capacity of 1,000 people on the evening of the boxing match. Aff. of Joe Hand ¶ 8, ECF No. 15-2; ECF No. 15-6, at 19 (Jeremy Carter's Facebook post stating the PWFFC "can hold 1000"). Because Plaintiff charged $30.00 per person based on an establishment's

7

capacity, Defendants would have paid $30,000.00 for the broadcast rights. Aff. of Joe Hand ¶ 7. Accordingly, I recommend granting Plaintiff's request for maximum statutory damages of $10,000.00.

I also find that Plaintiff's request for $50,000.00 in enhanced damages is proper. Section 605(e)(3)(C)(ii) provides:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation of subsection (a) of this section.

First, Plaintiff demonstrates that Defendants willfully violated the statute. Although Plaintiff does not articulate the precise method Defendants took to intercept the event, Plaintiff produces a sworn affidavit contending that the programming "cannot be mistakenly, innocently, or accidentally intercepted." Aff. of Joe Hand ¶ 9. The affidavit details various methods used to intercept Plaintiff's programming, all of which require willful action. *Id.* I find this sufficient to demonstrate willfulness. *See Gutierrez*, 544 F. Supp. 2d at 1185 (finding willfulness based on evidence that to receive the programming, the defendants would have had to "use an unauthorized decoder, divert the satellite signal, or misrepresent the establishment as a residence"); *see also Time Warner Cable of N.Y.C. v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems."). Second, Plaintiff produces evidence that Defendants violated the statute for their own financial gain. Defendants charged an entry fee of $10.00 per person, and they heavily marketed the event. *See* ECF No. 15-6.

Regarding the proper amount of enhanced damages, they should be equal to that which is

8

required to deter the offending conduct. *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 290 (E.D. Pa. 2014) ("[T]he deterrence rationale is the central driver of enhanced damages."). In calculating an appropriate number to ensure deterrence, courts consider "repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; [and] defendant's charging a cover charge or charging premiums for food and drinks." *Gutierrez*, 544 F. Supp. 2d at 1185 (quoting *Kingvision Pay-Per-View, Ltd. v. Recio*, 2003 WL 21383826, at *5 (S.D.N.Y. June 11, 2003)).

I find reasonable Plaintiff's request for $50,000.00 in enhanced damages. As a starting point, Defendants avoided paying Plaintiff $30,000.00. Aff. of Joe Hand ¶ 7, ECF No. 15-2. Thus, awarding enhanced damages in any amount less than $20,000.00 would encourage Defendants to avoid paying the required fee in the future. *See Fallaci v. New Gazette Literary Corp.*, 568 F. Supp. 1172, 1174 (S.D.N.Y. 1983) ("A willful infringer, however, should be liable for a substantial amount over and above the market value of a legitimate license for otherwise infringers would be encouraged to willfully violate the law knowing the full extent of their liability would not exceed what they would have to pay for a license on the open market."). Regarding the relevant factors, Defendants charged a $10.00 entry fee, received increased food and beverage sales, and heavily advertised the event. This likely allowed Defendants to realize significant profit, some of which they must pay to Plaintiff to deter future violations. Thus, I recommend finding that $50,000.00 is a reasonable and appropriate amount of enhanced damages. *See J&J Sports Prods., Inc. v. Valdovines*, No. 11-cv-02938-PAB-KMT, 2012 WL 3758841, at *3 (D. Colo. Aug. 28, 2012) ("[T]he Court finds that $50,000 is a reasonable amount of damages for a willful violation where

90 individuals paid a $10 cover charge to enter a facility with an occupancy of 608 people."); *Joe Hand Prods., Inc. v. Haddock*, No. 1:09cv0290 LJO DLB, 2009 WL 2136117, at *2 (E.D. Cal. July 14, 2009) (recommending enhanced damages of $50,000.00).

## IV.     Attorney's Fees and Costs

Section 605(e)(3)(B)(iii) permits Plaintiff to recover its costs and attorney's fees. Plaintiff requests costs of $450.00, which is reasonable in light of the $400.00 filing fee paid to initiate this case. Regarding fees, Plaintiff requests that I permit it to file a separate fee affidavit. I find this request reasonable.

## **CONCLUSION**

In sum, Plaintiff is entitled to default judgment on its claims against Defendants for violations of 47 U.S.C. §§ 553, 605. Because of the size of Defendants' establishment and the extent of their marketing efforts, I recommend granting Plaintiff $10,000.00 in statutory damages and $50,000 in enhanced damages. Furthermore, Plaintiff is entitled to its reasonable attorney's fees and $450.00 in costs. I recommend permitting Plaintiff to file a motion for attorney's fees with an accompanying fee affidavit within ten days of a final ruling on Plaintiff's Motion for Default Judgment. Accordingly, I respectfully recommend that Plaintiff's Motion for Default Judgment [filed July 6, 2018; ECF No. 15] be **granted.**[1]

---

[1] Be advised that all parties shall have fourteen days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676–83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed

Dated and entered at Denver, Colorado, this 1st day of August, 2018.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

findings and recommendations within fourteen days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kan. Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).